# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| KiewitPhelps | ) ASBCA No. 62980 |
| | ) |
| Under Contract No. W9128F-12-C-0023 | ) |

APPEARANCES FOR THE APPELLANT:

Vivian Katsantonis, Esq.
Christopher M. Harris, Esq.
John F. Finnegan, III, Esq.
  Watt, Tieder, Hoffar & Fitzgerald, LLP
  McLean, VA

Michael A. Branca, Esq.
  Peckar & Abramson, P.C.
  Washington, DC

APPEARANCES FOR THE GOVERNMENT:

Michael P. Goodman, Esq.
  Engineer Chief Trial Attorney
James M. Pakiz, Esq.
William G. Latka, Esq.
James J. Irvine, Esq.
Jacob W. Harberg, Esq.
  Engineer Trial Attorneys
  U.S. Army Engineer District, Omaha

## OPINION BY ADMINISTRATIVE JUDGE EYESTER ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The Army Corps of Engineers (Corps or government) moves to dismiss this appeal for lack of jurisdiction. Specifically, the Corps argues appellant KiewitPhelps (KP) submitted an unsigned, and therefore uncertified, claim to the contracting officer. KP disagrees and argues it did submit a certified claim to the contracting officer and then submitted another certification in response to a request from the Defense Contract Audit Agency (DCAA). The Corps argues the submission to DCAA is essentially irrelevant as it was never provided to the contracting officer. For the reasons set forth below, we deny the government's motion to dismiss.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On August 16, 2012, the Corps awarded Contract No. W9128F-12-C-0023 to KP for the construction of a new facility to serve the U.S. Strategic Command (R4,

tabs 2.01, 2.02).[1] The contract included the full text of Federal Acquisition Regulation (FAR) 52.233-1, DISPUTES (JUL 2002), which stated the contract was subject to the Contract Disputes Act (CDA) (R4, tab 2.01 at 1510-11). Accordingly, any claim over $100,000 had to provide a certification which "may be" executed by a representative authorized to bind the contractor with respect to the claim. The required certification was to state that the claim was made in good faith; supporting data was accurate and complete; the amount requested accurately reflected the contract adjustment for which the contractor believed the government was liable; and the signatory was authorized to certify the claim on behalf of the contractor. (*Id.*) FAR 52.233-1(d)(2)(iii), (d)(3)); *see also* 41 U.S.C. § 7103(b).

2. Ultimately, KP filed several claims with the Corps, many resulting in appeals with the Board. For example, on October 5, 2018, KP submitted a certified claim to the contracting officer seeking money and a time extension (R4, tab 27.01.02 at 165, 187, 199-200). The claim, in addition to including a signed certification, also included a signed proposed change order setting forth the claimed amounts, which also included the Defense Federal Acquisition Regulation Supplement (DFARS) 252.243-7002 certification (R4, tab 27.01.01 at 1). KP appealed a deemed denial of that claim to the Board, which was docketed as ASBCA No. 62119.

3. Two years later, on July 10, 2020, KP submitted the claim at issue here. Specifically, KP submitted Serial Letter No. H-2100 to the contracting officer seeking a contracting officer's final decision (COFD) pursuant to FAR 52.233-1. (R4, tab 29.01 at 1) According to the serial letter, titled in part "Delay & Disruption #3 (01 JAN 2018 – 19 FEB, 2019)," KP was submitting a two-part claim in the amount of $13,702,363 (*id.* at 1-2).

4. In part one, KP sought $8,803,026 for alleged government caused delays and inefficiencies for the period January 1, 2018 through February 19, 2019 (R4, tab 29.01 at 1). KP titled this part of the claim "Delay and Disruption #3." In part two, KP sought $4,899,337, arguing these were additional costs associated with its October 5, 2018 certified claim. KP titled this part of the claim "Additional Costs associated with Oct. 5th claim." (*Id.* at 1-2)

5. KP's project director signed the serial letter above his typewritten name and title (R4, tab 29.01 at 2). The serial letter did not include any certification language (*see* R4, tab 29.01).

_____

[1] Pursuant to an Order dated September 15, 2021, the government's Rule 4 consists of tabs 1-20 from ASBCA No. 61184, tabs 21-28 from ASBCA No. 62119, and tabs 29-30 from ASBCA No. 62980. In addition, the decision uses the PDF page numbers in a tab for citations to the record.

6. KP's serial letter specifically referenced and attached several supporting documents, including a narrative titled "Request for Contracting Officer's Final Decision [for] Delay and Disruption Impacts After December 2017"; proposed change order 02102; and proposed change order 02103. As relevant here, the serial letter noted that proposed change order No. 02102 supported part one of the claim and proposed change order No. 02103 supported part two of the claim. (R4, tab 29.01 at 1-2) The attachment titled Request for a Contracting Officer's Final Decision, dated July 9, 2020, was over 500 pages of information relating to both parts one and two of the claim; both proposed change orders were part of this document (*see* R4, tab 29.02).

7. Attached proposed change order No. 02102, addressing part one of the claim, included itemized amounts for each alleged cost incurred as well as general and administrative expenses, profit and bond costs; the amounts totaled $8,803,027[2] (R4, tab 29.02 at 21-22). The proposed change order included the following language:

> For costs incurred due to delay and disruption inefficiencies as outlined in the attached claim narrative (Attachment A). Window 1-Window 3 (January 1, 2018 - February 19, 2019).
>
> Reference the claim narrative for all corresponding exhibits and schedules.
>
> In accordance with DFARS 252.243-7002, I certify that the request is made in good faith and that the supporting data are accurate and complete to the best of my knowledge and belief.

(*Id.* at 21). The certification included the name of KP's "Authorized Negotiator," phone number and title of KP's "Project Director," and was dated July 11, 2020. The signature block, however, was blank. (*Id.* at 21-22) The KP authorized negotiator listed (*i.e.*, KP's project director) was the same person that signed Serial Letter No. H 2100 (*compare* R4, tabs 29.02 at 21-22, *with* 29.01 at 2).

8. Likewise, attached proposed change order No. 02103, addressing part two of the claim, included itemized amounts for each alleged additional costs incurred as well as general and administrative expenses, profit, bond costs, and builder's risk insurance; the amounts totaled $4,899,338. The proposed change order also included the same certification language as proposed change order No. 02102, quoted above. The

---

[2] On the page following proposed change order No. 02102 is an Excel worksheet providing detail about the claim amount; the total set forth for the claim is $8,803,026 (R4, tab 29.02 at 23).

certification included the name of KP's "Authorized Negotiator," phone number and title of KP's "Project Director," and was dated July 7, 2020. Again, the signature block was blank. (R4, tab 29.02 at 503) And, again, the KP authorized negotiator listed (*i.e.*, KP's project director) was the same person that signed Serial Letter No. H-2100 (*compare* R4, tabs 29.02 at 503, *with* 29.01 at 2).

9. On August 21, 2020, the contracting officer notified KP she received Serial Letter No. H-2100 with the attached 528-page narrative that included supporting data regarding the claim and stated she would issue a decision by April 16, 2021 (R4, tab 30.01 at 1-2). The contracting officer explained she would seek outside expert assistance to perform a critical path schedule analysis and "intends to exercise [the government's] contractual rights to have the [DCAA] audit the claimed costs" (*id.* at 1). In this regard, the contract incorporated in full text FAR 52.215-2, AUDIT AND RECORDS—NEGOTIATION (OCT 2010) (R4, tab 2.01 at 1440). According to the clause, if the contractor is required to submit cost or pricing data with any pricing action such as a modification, the contracting officer "or an authorized representative" of the contracting officer "shall have the right to examine and audit the [c]ontractor's records," etc., to evaluate the accuracy, completeness and currency of the data (*id.*). FAR 52.215-2 (c). Based on the contracting officer's letter to KP and the contract, DCAA was therefore an authorized representative of the contracting officer to review, examine and audit KP's records for accuracy, completeness and currency of the data.

10. As a follow-up to a prior site visit, on September 21, 2020, a DCAA senior auditor emailed KP's project director and requested certain information regarding the July 10, 2020 claim. The DCAA senior auditor requested a certification as follows:

> I did not see a certification for the claim as required by FAR 52.233-1. Can you provide the certification for the current claim? I have included a copy from the prior KP claim in an attachment to show an example of what document I am referring to. If this was already provided, please point me to the page number.

(App. opp'n, ex. 2 at 3-4)

11. The DCAA senior auditor forwarded this email to the contracting officer the next day, expressing concern that KP "may only provide the certification" to address issues DCAA identified. The DCAA senior auditor noted she would "be in touch once" KP submitted a formal response. (App. opp'n, ex. 2 at 3) The contracting officer replied hours later the same day and stated that she "found the certification statement buried in the price summary sheet" and "initially questioned the validity and acceptability" per FAR 33.207 as the certifying statement was incomplete (*id.* at 2). More important, the contracting officer stated she "agree[d] <u>we should request KP</u>

4

provide[] a proper statement" (*id.*) (emphasis added). The contracting officer was therefore working with DCAA on reviewing the claim, was aware that DCAA requested a new certification, and agreed that both she and DCAA should have KP provide a new certification.

12. On September 29, 2020, KP provided a claim certification to DCAA (app. opp'n, ex. 1 at 2, ex. 2 at 2). The certification, dated September 29, 2020 and titled "Delay & Disruption #3 (01 Jan 2018 – 19 Feb 2019) CERTIFICATION," was signed by KP's project director (the same individual that signed the serial letter and was listed on the proposed change orders as the authorized negotiator). The certification stated that KP's claim was made in good faith; supporting data were accurate and complete; the amount and time requested accurately reflected the contract adjustment for which the contractor believed the government was liable; and the certifier was authorized to certify the claim on behalf of KP. The certification also noted that KP was sponsoring the subcontractor's claims. (App. opp'n, ex. 1 at 2) The parties do not dispute that KP provided a signed claim certification to the DCAA auditor (gov't mot. at 4; app opp'n at 3).

13. On October 9, 2020, the DCAA senior auditor emailed the contracting officer and explained "the only additional information that was provided [by KP] was the claim certification" (app. opp'n, ex. 2 at 2). Apparently, neither the DCAA senior auditor nor KP ever sent the signed certification to the contracting officer (gov't mot. at 4). Regardless, the contracting officer was aware that DCAA, acting as her authorized representative, had a copy of the claim certification.

14. On November 12, 2020, the contracting officer requested additional information from KP. While the letter sought additional information regarding the time impact analysis, among other things, it did not request a certification. (R4, tab 30.02)

15. In a letter dated December 15, 2020, DCAA formally notified KP that it "received a request" from the contracting officer to examine the "certified claim submitted under FAR 52.233-1." According to DCAA, KP's management was responsible for preparing the proposed amounts in compliance with certain criteria, including "internal controls to prevent or detect and correct noncompliances due to error or fraud." (App. opp'n, ex. 3 at 1) DCAA carbon copied the contracting officer (*id.* at 2).

16. On December 18, 2020, KP submitted adjustments to its claim to the contracting officer (R4, tab 29.03 at 1).

17. On April 16, 2021, the Corps issued a COFD finding partial merit in KP's claim (R4, tab 30.03). The COFD, which was issued nine months after KP submitted

5

the claim, stated: "As a preliminary matter, I note that this claim is not properly certified pursuant to FAR 33.207(c). I have reviewed the merits of the claim but proper certification of the claim is not waived" (*id.* at 1). There is nothing in the record evidencing the contracting officer asked DCAA or KP for the signed certification prior to issuing the COFD despite knowing that both parties had this document (*see* gov't mot. at 4).

18. A few months later, DCAA issued an audit report dated July 28, 2021, examining "KP's certified claim as requested by the [Corps]" (gov't mot., ex. A at 1). According to this DCAA audit report, KP certified the claim on September 29, 2020 (*id.* at 3-4). DCAA conducted the audit pursuant to standards that allow DCAA to assess the risk of material noncompliance whether due to error or fraud (*id.* at 4).

19. KP appealed the COFD to the Board on July 9, 2021, which has been docketed as ASBCA No. 62980.

DECISION

The Corps first argues that there was a complete lack of certification on the claim because there was no signed certification as required by the CDA, 41 U.S.C. § 7103(b). The Corps contends that since KP failed to certify the claim, there is no valid claim here, the Board lacks jurisdiction, and must dismiss the appeal without prejudice. (Gov't mot. at 1, 4-6)

In response, KP argues that it submitted a signed certification to the contracting officer in its original July 10, 2020 submission when the project director signed the claim/serial letter as the KP project director, and included certification language with his name, title and role in two proposed change orders attached and corresponding to the claim (app. opp'n at 5-6). The Corps counters by arguing that "[t]here is no reason to believe" the project director's signature on the claim letter was intended to certify the cost information/certification language "buried" in the attachments to the claim letter. The Corps further argues that there is no explanation as to why the signature line under the certification language on the proposed change orders is blank; in other words, if the project director intended to certify the claim he would have signed those change orders. (Gov't reply at 2)[3]

---

[3] The Corps also argues that the project director could not have intended his signature to apply to one of the proposed change orders because he signed the claim letter on July 10, 2020 but dated one of the proposed change orders for July 11, 2020 (gov't reply at 3). We have stated before there is no CDA requirement that the certification include the date it is signed. *Wright Bros., the Bldg. Co., Eagle LLC*, ASBCA No. 62284, 20-1 BCA ¶ 37,714 at 183,085. In addition, the

6

The Board's jurisdiction is governed by the CDA, which requires the contractor's submission of a claim to the contracting officer for decision. 41 U.S.C. § 7103(a)(1). The CDA states that for claims greater than $100,000, the "contractor shall certify that" the claim is made in good faith; the supporting data are accurate and complete to the best of the contractor's knowledge and belief; the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable; and the certifier is authorized on behalf of the contractor to certify the claim. *Id.* § 7103(b)(1). The FAR requires the same. FAR 33.207(c), 52.233-1(d)(2)(iii); *see also* SOF ¶ 2. In fact, the FAR explains that "a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under [the CDA], until certified as required by the statute." FAR 2.101.

In addition, the CDA explains a contracting officer's duties with respect to a contractor's failure to certify a claim or where there is a defective certification as follows:

> Failure to certify or defective certification.—A contracting officer is not obligated to render a final decision on a claim of more than $100,000 that is not certified in accordance with paragraph (1) if, within 60 days after receipt of the claim, the contracting officer notifies the contractor in writing of the reasons why any attempted certification was found to be defective. A defect in the certification of a claim does not deprive a court or an agency board of jurisdiction over the claim. Prior to the entry of a final judgment by a court or a decision by an agency board, the court or agency board shall require a defective certification to be corrected.

41 U.S.C. § 7103(b)(3). Consistent with statute, the Board has held that where the claim certification is defective "the Board still possesses jurisdiction to consider [the claim] [but] . . . must order the defect corrected." *Kamaludin Slyman CSC*, ASBCA No. 62006 *et al.*, 21-1 BCA ¶ 37,849 at 183,793 (citing *Dai Glob. v. Adm'r of the United States Agency for Int'l Dev.*, 945 F.3d 1196, 1198 (Fed. Cir. 2019)).

The CDA does not set forth a definition of a defective certification. In fact, only in the title of paragraph (b)(3) does the statute distinguish between a failure to

---

Corps ignores the fact that the claim was submitted on July 10, 2020 and that is the date of the applicable signature and misdated certifications can be corrected. *See Loral Fairchild Corp.*, ASBCA No. 45719, 95-1 BCA ¶ 27,425 at 136,682 (a misdated certification was defective and therefore correctable).

certify and a defective certification. 41 U.S.C. § 7103(b)(3). The FAR, however, does attempt to define the terms and states a defective certification is one "which alters or otherwise deviates from the language in 33.207(c) or which is not executed by a person authorized to bind the contractor with respect to the claim." FAR 33.201. The FAR then states that the failure to certify a claim is not a defective certification. *Id.* Accordingly, the failure to certify a claim at all cannot be corrected. *See id.* If the contractor fails to certify the claim, the Board lacks jurisdiction. *URS Fed. Servs., Inc.*, ASBCA No. 61443, 19-1 BCA ¶ 37,448 at 181,967 (citations omitted). Appellant KP bears the burden of establishing jurisdiction, by a preponderance of the evidence. *Id.* (citations omitted).

The question presented here is whether a signature by an authorized official on a claim letter where the actual certification language is part of an attachment to that letter is sufficient to meet the CDA's requirement for certification, or defective certification as a defective certification can be corrected. In this regard, as noted, KP's project director signed the July 10, 2020 Serial Letter No. H-2100 requesting a COFD but the claim letter failed to include any certification language (SOF ¶ 5). Further, while there were two certifications corresponding to each claim part in the attachment to the claim letter, there was no signature directly under the certifications (SOF ¶¶ 4, 6-8). There was, however, the name of the KP authorized negotiator and title of project director, and the KP authorized negotiator listed was the same person that signed Serial Letter No. H-2100 (*id.*). Neither party disputes that the project director was an authorized representative.

We have stated before that an unsigned certification on a claim means the claim was not certified because it was not "executed", and such a failure cannot be remedied. *URS Fed. Servs., Inc.*, 19-1 BCA ¶ 37,448 at 181,967. For example, in *Betance Enterprises, Inc.*, the appellant submitted four claims signed by the company president. *Betance Enters., Inc.*, ASBCA No. 62819 *et al.*, 21-1 BCA ¶ 37,881 at 183,980. Directly above the president's signature on the claim letter was a statement that the required certification, per FAR 52.233-1, was attached as an exhibit. *Id.* The attached exhibit contained the CDA (and FAR) certification language but was left unsigned and failed to include any mark other than the exact words "[Signature block]." *Id.* We concluded that the failure to sign the certifications was not a defect that could be corrected such that the Board could retain jurisdiction. *Id.* We specifically noted that there was no name or identification of the individual purportedly certifying the claim. *Id.* n.*.

Similarly, in *LR General Solutions*, ASBCA No. 63458, 23-1 BCA ¶ 38,403, we again addressed the issue of whether a signature by an authorized official on a letter attached to an unsigned certification was sufficient to meet the CDA's requirement for execution of the certification. We concluded that appellant failed to execute a certification of the claim because although the claim letter was signed, there

was only the name of the company on the correctable certification, and no signature, not even the name or identification of the individual for anyone to determine who was responsible. *LR Gen. Sols.*, 23-1 BCA ¶ 38,403 at 186,608.

Those appeals are distinguishable. In both, there was nothing with the certification, not a name or any other information identifying who was the authorized official representing the contractor; in other words, there was nothing to tie the certification to the signature on the claim letters.

In comparison to those two appeals, in *Apex Int'l Mgmt. Servs., Inc.*, appellant submitted one claim letter setting forth multiple claims and placed certification language after each claim; appellant, however, only placed a signature at the end of the claim letter and not with each certification. *Apex Int'l Mgmt. Servs., Inc.*, ASBCA No. 44647, 93-1 BCA ¶ 25,460 at 126,812. The Board held the signature at the end of the letter applied to "all matters in the letter, and particularly to the certification language after each claim." *Id.*

Considering all of the facts here and our prior decisions, we conclude that though it may be a close call, [4] there was a certification provided with the July 10, 2020 claim; the certification was defective, however, because it was the DFARS request for equitable adjustment certification. With respect to the alleged lack of a signature on the certification we conclude there was a signature of an authorized individual on the claim letter specifically referencing the proposed change orders and those change orders included certification language and identifying information of the signatory which is sufficient enough to allow the contracting officer to proceed and have the contractor, KP, correct any defects.[5] *See Kamaludin Slyman CSC*, 21-1 BCA ¶ 37,849 at 183,794 ("[T]here needs to be something purporting to be a certification in order to reach the threshold of being a defective certification."). Important to note is that the unsigned certification language was not "buried" in the supporting documentation as the Corps has argued but was part of the proposed change orders

---

[4] Let us be clear that what KP did made this a much closer call than it should have been (and failure to sign at the actual location of the certification language is a poor practice, not to be emulated), but nevertheless, it did meet the minimum requirements necessary in the facts presented here.

[5] The Corps does not take issue with the contractor's use of the DFARS certification for a request for equitable adjustment (*see, e.g.*, gov't mot. at 5-6*)*. This is likely because we have stated before that such language was sufficiently close to the CDA certification language, and the contractor was entitled to correct its certification. *Air Servs., Inc.*, ASBCA No. 59843, 15-1 BCA ¶ 36,146 at 176,427.

9

(the most salient part of the claim, where the actual numbers were tabulated to support KP's demand) and, of course, the contracting officer found the certification language in her review of the documents. In short, though it was on a different page of the correspondence, we find that the signature was sufficiently linked to the certification language to be an operative execution of it.

Alternatively, if we had concluded that the claim certification was unsigned, we would still hold that it was remedied when KP provided the directly signed certification to DCAA at its request and with the knowledge of the contracting officer. As noted, the Corps contends that KP cannot correct such an omission with a certification provided to another government entity such as DCAA (gov't mot. at 1-2, 5, 7-10; gov't reply at 3-6). Specifically, the Corps argues that DCAA was not an agent of the contracting officer as the contracting officer never directed DCAA to request a revised and signed certification and the contracting officer never received the signed certification from KP or DCAA (gov't reply at 4). KP disagrees and contends that DCAA was acting on behalf of the contracting officer when it requested a new certification, the contracting officer was aware KP provided a new certification, and the contracting officer's failure or refusal to review and not accept the October 2020 certification, especially after issuing a COFD in 2021, is inequitable and unreasonable (app. opp'n at 6-9).

Some background is helpful here to place the remedied certification in context. The Federal Courts Administration Act of 1992, Pub. L. No. 102-572, amended the CDA to address jurisdiction and allow the correction of defective certifications. Pub. L. No. 102-572, § 907(a), 106 Stat. 4506, 4518 (1992). The House Report discussing this provision explained that the certification requirement "insure[s] that complete, clear, and honest claims are presented to Federal contracting officers." H.R. REP. No. 102-1006, 28, 1992 U.S.C.C.A.N. 3921, 3937. The same House Report also explained the impetus for the particular section regarding defective certifications, namely that "contractors whose certifications are defective as the result of innocent mistake or inadvertence should not be penalized where their claims are otherwise meritorious" and further, where "a good faith effort appears to have been made to provide a responsive certification in the first instance, including recertifications filed in response to contracting officer inquiries after the initial claim was filed." H.R. REP. No. 102-1006, 28, 1992 U.S.C.C.A.N. 3921, 3937. Therefore, defective certifications can be corrected as long as we remember the "critical importance of the certification requirement [is] deter[ing] fraud." *Kamaludin Slyman CSC*, 21-1 BCA ¶ 37,849 at 183,793. In sum, the certification requirement is not in place to trip up a contractor with needless formalism, but to prevent fraud.

Here, the contracting officer asked DCAA to review part of the claim and DCAA asked for a corrected certification and informed the contracting officer it was doing so (SOF ¶¶ 9-11). Both the CO and DCAA agreed that KP should provide a new

certification (SOF ¶ 11). Further, KP had reason to believe DCAA was acting on the contracting officer's behalf (*see* SOF ¶ 9), and therefore quickly submitted its corrected certification to DCAA (SOF ¶ 12). When DCAA received the corrected certification, it notified the contracting officer that KP provided it (SOF ¶¶ 12-13). The FAR clause addressing audits notes one purpose of an audit is to check for accuracy and completeness and DCAA's own audit report noted a purpose was to check for fraud (SOF ¶¶ 9, 18). And the CDA explains that a contractor is liable to the "Federal Government" for misrepresentation or fraud in a claim. 41 U.S.C. § 7103(c)(2).

As we just explained, a certification serves the purpose of deterring fraud and ensuring the contractor stands behind its claim. The contracting officer issued the COFD with full knowledge that a signed certification had already been provided to DCAA as part of the claim evaluation process and DCAA issued its audit after receipt of the corrected certification. Moreover, the corrected certification was submitted well within the CDA's 6-year statute of limitations. Thus, even if we had concluded that the certification was originally unsigned, we would perceive no legitimate reason to punish KP because DCAA failed to forward to the contracting officer the complete certification that the contracting officer knew had been provided.[6]

While it is frustrating that KP, a contractor that has managed to submit signed certifications with its other claims (*see* SOF ¶ 2) and failed to follow a process it knows well here, it is also frustrating that the Corps has failed to recognize KP's corrected certification. Based on the facts presented here, we therefore conclude the initial certification should be considered to be signed, but defective and, in any event, was immediately corrected by KP at the government's request. *Cf. EHR Doctors, Inc. v. Soc. Sec. Admin.*, CBCA 3426-FEMA, 13 BCA ¶ 35,371 at 173,571-72 (holding there was no jurisdiction because a purported claim without a certification was submitted to an auditor and no claim or certification was ever submitted to the contracting officer). The corrected certification served its purpose by providing the Corps (and the government) assurance that KP submitted complete, clear and honest claims and if they did not, the government has an avenue to address any issues.[7]

---

[6] Without a doubt, had there been fraud in KP's claim, the new certification that it provided to DCAA would be amongst the government's prime trial exhibits, even if the contracting officer had never seen it – and rightfully so.

[7] The Corps further asserts that although it issued a COFD, that decision has no legal effect as the contracting officer cannot waive a lack of certification (gov't mot. at 5; gov't reply at 6). While we note it, we did not rely on the fact that the contracting officer issued a COFD to find there was a defective certification which was later corrected. *See Wright Bros., the Bldg. Co., Eagle LLC*, 20-1 BCA ¶ 37,714 at 183,085 ("[T]o determine whether appellant submitted a certification with its claim here, we do not look to, or rely upon, the fact that the contracting officer issued a final decision on appellant's claim. Rather, we look

11

CONCLUSION

For these reasons, the government's motion to dismiss for lack of jurisdiction is denied and the stay is lifted.

Dated: March 24, 2025

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

to the surrounding circumstances, including the correspondence between the parties, which make clear that the certification applied to the claim."). The Corps also argues that "piecemeal" submissions of a claim certification are unacceptable but generally cites to decisions issued prior to the 1992 CDA amendments and therefore fails to explain how those cases relate to defective certifications (gov't mot. at 7-8). Plus, we have stated before that a claim and its CDA certification do not have to be submitted at the same time. *See J&J Maint., Inc.*, ASBCA No. 50984, 00-1 BCA ¶ 30,784 at 152,025 (citations omitted).

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62980, Appeal of KiewitPhelps, rendered in conformance with the Board's Charter.

Dated:  March 24, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

13